UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER DUFRESNE AND ESTATE OF SYLVIA BROWN,<br><br>Plaintiffs,<br><br>v.<br><br>JP MORGAN CHASE BANK, NA, et al.,<br><br>Defendants. | Case No. 1:19-cv-00777-DAD-EPG<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING THAT DEFENDANTS JPMORGAN CHASE BANK, N.A. AND WILMINGTON TRUST COMPANY'S MOTION TO DISMISS BE GRANTED AND PLAINTIFFS' REQUEST FOR LEAVE TO AMEND BE DENIED<br><br>(ECF NOS. 3, 10) |

Plaintiffs Christopher Dufresne and the Estate of Sylvia Brown ("Plaintiffs") bring this suit against Defendants JPMorgan Chase Bank, N.A. ("Chase"), Wilmington Trust Company ("WTC"), Quality Loan Service Corp. ("Quality"), DOES 1-100, and Guaranty Holdings of California, Inc. ("Guaranty Holdings"), (collectively "Defendants") alleging that Defendants improperly foreclosed on property in Calaveras County. Plaintiffs allege causes of action for "(1) wrongful foreclosure, (2) cancellation of instruments, (3) declaratory relief, and (4) to set aside Trustee's sale." (ECF No. 1-1.)

On June 10, 2019, Defendants Chase and WTC filed a motion to dismiss all of Plaintiffs' claims. (ECF No. 3.) For the following reasons, the Court recommends that Chase and WTC's

motion to dismiss be granted and that, to the extent considered, Plaintiffs' request for leave to amend be denied.

**I.     BACKGROUND**

**A.  Allegations in the Complaint** [1]

Plaintiffs' Complaint alleges as follows:

On or about September 23, 2004, Plaintiffs executed a Promissory Note ("Loan") in connection with a loan they received in the amount of $1,000,000 from Washington Mutual Bank, FA ("WAMU") for real property located at 108 Sanguinetti Court, Copperopolis, CA 5228 ("the Property"). The Loan was secured by a Deed of Trust ("DOT") recorded against the Property with the Calaveras County Recorder's Office on September 28, 2004. The DOT identified Sylvia C. Brown and Christopher M. Dufrense as the "Borrower," WAMU as the "Lender" and "Beneficiary," and California Reconveyance Company as the "Trustee."

Plaintiffs allege on "information and belief" that immediately after the Loan was funded and no later than December 31, 2004, WAMU sold and/or transferred the Loan to an unidentified third-party and WAMU ceased to be the Lender or Beneficiary under the Loan or DOT. Plaintiffs further allege that it was WAMU's "business model and practice to sell these loans immediately after they were funded. The secondary market's refusal to purchase these loans in 2008 then caused WAMU to collapse." (ECF No. 1-1, ¶10.)

The Federal Deposit Insurance Corporation ("FDIC") put WAMU into receivership on September 25, 2008. However, Plaintiffs allege on information and belief that WAMU was no longer the beneficiary of the loan at the time it was placed into receivership by the FDIC "because it previously sold the loan on or before December 31, 2004." (*Id.* at ¶11.) Thus, according to

---

[1] A court may consider "material which is properly submitted as part of the complaint" on a motion to dismiss without converting the motion to dismiss into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994). If the documents are not physically attached to the complaint, they may be considered if the documents' "authenticity…is not contested" and "the plaintiff's complaint necessarily relies" on them. *Parrino v. FHP, Inc.*, 146 F.3d 699, 705-06 (9th Cir. 1998). Further, under Fed. R. Evid. 201, a court may take judicial notice of "matters of public record." *Mack v. South Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986). Here, the Court has considered those materials attached to Plaintiffs' Complaint in deciding this motion, as well as the documents it references in its Complaint. And as discussed below, the Court takes judicial notice of Exhibits A-E to Chase and WTC's Request for Judicial Notice and considers these documents as well.

Plaintiffs, the FDIC never acquired any interest in their Loan.

On July 16, 2015, Chase, as attorney-in-fact for the FDIC as receiver of WAMU, executed a Corporate Assignment of Deed of Trust to Chase ("Assignment 1"). Assignment 1 transferred the DOT on Sylvia Brown's property to Chase, thereby purporting to "further memorialize the transfer that occurred by operation of law on September 25, 2008, as authorized by Section 11(d)(2)(G)(i)(II) of the Federal Deposit Insurance Act, 12 U.S.C. § 1821(d)(2)(G)(i)(II)." (Exhibit C to Plaintiffs' Complaint).

That same day, Chase executed another Corporate Assignment of Deed of Trust, this time purporting to transfer whatever interest it had in the DOT to WTC in its individual capacity but solely as successor Trustee to U.S. Bank, N.A. as Trustee to MASTR Asset Securitization Trust 2004-11 ("Assignment 2") (Exhibit D to Plaintiffs' Complaint).

On August 3, 2015, Assignment 1 was recorded with the Calaveras County Recorder's Office as Document No. 2015-8589. On the same day, Assignment 2 was recorded with the Calaveras County Recorder's Office as Document No. 2015-8590.

On or about October 6, 2015, Chase as alleged attorney-in-fact for WTC, executed a Substitution of Trustee ("SOT") purporting to name Quality as the successor Trustee under the DOT. On or about October 13, 2015, Quality as the purported successor Trustee, executed a Notice of Default and Election to Sell Under Deed of Trust ("NOD") alleging that Plaintiffs were in default in the amount of $56,732.55.

On October 15, 2015, the SOT was recorded with the Calaveras County Recorder's Office as Document No. 2015-11499. On July 18, 2018, Quality executed a Notice of Trustee's Sale ("NOTS") which set a foreclosure sale for August 21, 2018, and a sale amount of $525,674.65.

On July 20, 2018, the NOTS was recorded with the Calaveras County Recorder's Office as Document No. 2018-008258.

On December 11, 2018, Defendants completed a foreclosure sale of the Property through which the Property was sold to Guaranty Holdings.

On December 14, 2018, Quality executed a Trustee's Deed Upon Sale ("TDUS") purportedly transferring title in the Property to Guaranty Holdings.

On December 19, 2018, the TDUS was recorded with the Calaveras County Recorder's Office as Document No. 2018-013873.

### B. *Brown* 1 and the Instant Suit

Plaintiffs originally filed suit against Defendants in Calaveras County on December 18, 2018, alleging causes of action relating to Plaintiffs' failure to secure a loan modification from Chase. (Chase and WTC refer to this suit as *Brown* I, and the Court adopts that reference herein). Defendants removed the case to this Court and filed a motion to dismiss for failure to state a claim. (ECF No. 10 in Case No. 1:19-cv-00042-LJO-BAM.) Plaintiffs then filed a First Amended Complaint adding causes of action for cancellation of instruments and quiet title. (ECF No. 12 in Case No. 1:19-cv-00042-LJO-BAM.) Defendants again moved to dismiss. Plaintiffs voluntarily dismissed *Brown* 1 on April 26, 2019, the same day they filed this suit in state court. (ECF No. 28. in Case No. 1:19-cv-00042-LJO-BAM.)

Defendants removed the instant suit to this Court on June 3, 2019. (ECF No. 1.) The crux of Plaintiffs' allegations are that Defendants lacked an interest in their Loan because WAMU allegedly sold it to an unidentified third party before being acquired by the FDIC. Thus, the foreclosure was illegal, and the instruments executed in furtherance of the foreclosure—particularly Assignments 1 and 2—are void and subject to cancellation.

### C. Motion to Dismiss

On June 10, 2019, Chase and WTC filed a motion to dismiss Plaintiffs' Complaint. (ECF No. 3.) Chase and WTC also filed a request for judicial notice on that same date. (ECF No. 4.) The assigned district judge referred the motion to the undersigned for findings and recommendations on June 20, 2019. (ECF No. 7.)

In the motion to dismiss, Chase and WTC claim that WAMU did sell the Loan in 2004, but it was sold to the MASTR Asset Securitization Trust 2004-11 ("Trust"), the beneficiary that ultimately foreclosed on the Loan in 2018, with WAMU retaining the servicing rights. Chase claimed that it then acquired those servicing rights from the FDIC after the FDIC had placed WAMU into receivership. The documents susceptible of judicial notice (see below) establish the following chronology:

- Several WAMU-originated loans were transferred to the Trust in 2004. (Request for Judicial Notice ("RJN"), Ex. A. at 23, 27 & § 3.14.) Under the Trust's Pooling and Servicing Agreement, WAMU remained the servicer for all WAMU-originated loans, with the power to conduct foreclosure in the event of default.[2]

- On September 25, 2008, Chase acquired WAMU's assets from the FDIC through a Purchase and Assumption Agreement. (RJN, Ex. B.) The Purchase and Assumption Agreement explains that Chase acquired, with limited exceptions, "all of the assets" of WAMU, and it "specifically purchases all mortgage servicing rights and obligations." (*Id.* at § 3.1.)

- On September 17, 2014, the Trust, at that point having U.S. Bank N.A. as Trustee, also executed a limited Power of Attorney further establishing Chase's ability to foreclose on WAMU-originated loans that had been sold to the Trust. (RJN, Ex. C.)

After setting forth their explanation for their legal right to foreclose on Plaintiffs' property, Chase and WTC argue that Plaintiffs' Complaint should be dismissed because each cause of action rests on the single "information and belief" allegation that Plaintiffs' original lender, WAMU, "sold and/or transferred [Plaintiffs'] Loan to a third party" in 2004, and that, as a result of this sale, Chase never acquired any interest in Plaintiffs' Loan and that all recorded instruments associated with the foreclosure are thus void. Chase and WTC argue that Plaintiffs lack sufficient basis for this assertion and that, more importantly, that allegation is consistent with Chase's basis for foreclosure, which stems from WAMU's sale of the Loan to the Trust. Because Plaintiffs do not, and cannot, truthfully allege that WAMU sold Plaintiffs' Loan to someone other than the Trust and provide no allegation that Chase's rights are otherwise invalid, all causes of action stemming from that allegation should be dismissed.

Chase and WTC also argue that, even assuming Plaintiffs' "information and belief" allegations were sufficient to show the foreclosure was improper, Plaintiffs' causes of action still fail because they have not alleged prejudice resulting from the foreclosure or their ability to tender the debt owed.

---

[2] The Court notes that these documents refer to various loans and do not name Plaintiffs' Loan in particular.

### D. Plaintiffs' Opposition

On July 12, 2019, Plaintiffs filed an opposition to the motion to dismiss and portions of the request for judicial notice. (ECF Nos. 10, 11.) Plaintiffs argue that their "information and belief" allegations are sufficient because they have sufficiently put "Defendants on notice of the claims being made against them." (ECF No. 10, p. 2.) Plaintiffs also contend that the information sufficient to show that WAMU sold the Loan to an unidentified third party is within Defendants' possession and will come out during discovery, thus justifying the "information and belief" allegations at this point in the proceedings. Finally, Plaintiffs maintain that they are not required to allege prejudice and tender of the debt here, where their allegations demonstrate the "trustee's deed is void on its face." (*Id.*, p. 7) (citing *Loan v. Citibank, N.A.*, 202 Cal.App.4th 89, 113 (Cal. App. 2013).

At bottom, Plaintiffs' arguments depend entirely on the "information and belief" allegations of the sale of the Loan to an unidentified third party. Plaintiffs do not challenge Chase and WTC's ability to foreclose on the Property if either WAMU transferred the loan to the Trust in 2004 or kept the Loan until 2008.

### II. LEGAL STANDARDS

A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of a claim." *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). In deciding a Rule 12(b)(6) motion, the Court accepts as true all well-plead factual allegations and construes them in the light most favorable to the plaintiff. *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011). While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citation omitted).

"The *Twombly* plausibility standard…does not prevent a plaintiff from pleading facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible." *Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017) (quoting *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (citations and quotation marks omitted).

But, in deciding a motion to dismiss, the Court is not required to "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (citing *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994)).

**III. ANALYSIS**

**A. Request for Judicial Notice**

Chase and WTC ask the Court to take judicial notice of the following documents in deciding the motion to dismiss:

1. A November 1, 2004 Pooling and Servicing Agreement between Mortgage Asset Securitization Transactions, Inc., UBS Real Estate Securities Inc., Wells Fargo Bank, N.A. and U.S. Bank National Association as Trustee and Custodian for the MASTR Asset Securitization Trust 2004-11, which is available at https://www.sec.gov/Archives/edgar/data/1310190/000116231805000041/f46342psa.htm. (Exhibit A to the RJN);

2. A September 25, 2008 Purchase and Assumption Agreement between the Federal Deposit Insurance Corporation as Receiver of WAMU and Chase available at https://www.fdic.gov/about/freedom/Washington Mutual P and A.pdf; (Exhibit B to the RJN);

3. A September 17, 2014 Limited Power of Attorney Agreement between the Trust, by and through the U.S. Bank National Association, and Chase, recorded on June 29, 2015 as Document Number 27658 with the Middlesex North Registry of Deeds; (Exhibit C to the RJN);

7

4. Sylvia Brown's death certificate issued on November 27, 2013, by the County of Santa Clarita Public Health Department (Exhibit D to the RJN); and

5. The First Amended Complaint in the action entitled *Estate of Sylvia Brown et al. v. JPMORGAN Chase N.A. and DOES-100, inclusive*, Case NO. 1:19-cv-00042-110-SKO (E.D. Cal. Feb. 13, 2019) (Exhibit E to the RJN.)

Plaintiffs only oppose the Court taking judicial notice of Exhibit E, the First Amended Complaint in *Estate of Sylvia Brown et al. v. JPMORGAN Chase N.A. and DOES -100*, *inclusive*, Case No. 1:19-cv-00042-110-SKO (E.D. Cal. Feb. 13, 2019).

A court may take judicial notice of a fact "not subject to reasonable dispute [and]…capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b); *see also MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986) (stating that a court "may take judicial notice of matters of public record outside the pleadings"). Courts "may presume that public records are authentic and trustworthy." *Gilbrook v. City of Westminster*, 177 F.3d 839, 858 (9th Cir. 1999). Such judicially-noticeable public records include documents relating to real property and printouts from a government website. *See Lane v. Vitek Real Estate Industries Group*, 713 F.Supp.2d 1092, 1097 (E.D. Cal. 2010) (taking notice of publicly-recorded documents related to mortgage because "they are matters of public record whose accuracy cannot be questioned.") (citation omitted). Moreover, courts have consistently held that courts may take judicial notice of documents filed in other court proceedings. *See Del Puerto Water Dist. v. U.S. Bureau of Reclamation*, 271 F.Supp.2d 1224, 1232 (E.D. Cal. 2003) ("Judicially noticed facts often consist of matters of public record, such as prior court proceedings."). "While the court cannot accept the veracity of the representations made in the documents, it may properly take judicial notice of the existence of those documents and of the 'representations having been made therein.'" *San Luis Unit Food Producers v. United States*, 772 F.Supp.2d 1210, 1216 n.1 (E.D. Cal. 2011) (citation omitted).

Here, the Court finds that Exhibits A-E to the RJN are subject to judicial notice: Exhibits A and B are documents available from reliable websites run by government agencies, while Exhibits C-E are matters of the public record. Thus, the Court recommends granting Chase and

WTC's Request for Judicial Notice and considering Exhibits A-E in deciding the motion to dismiss.

The Court notes, however, that although it recommends taking judicial notice of the documents and representations therein, it does not recommend accepting the veracity of those representations for purposes of this motion.

### B. Motion to Dismiss

Plaintiffs' wrongful foreclosure and cancellation of instruments causes of action depend upon "information and belief allegations" that, in 2004, WAMU sold their loan to an unidentified third party in such a way that Chase did not acquire the right to foreclose on the Loan. The relevant factual allegations are as follows:

> On information and belief, Plaintiffs allege that immediately after the loan was funded and no later than December 31, 2004, WAMU sold and/or transferred the loan to a third-party and WAMU ceased to be Lender or Beneficiary under the Loan no later than December 31, 2004.
>
> It was WAMU's business model and practice to sell loans immediately after they were funded. The secondary market's refusal to purchase these loans in 2008 then caused WAMU to collapse.

(ECF No. 1-1, ¶9-10.)

Chase and WTC argue that Plaintiffs' "information and belief" allegations of a Loan sale in 2004 are insufficient to sustain the Complaint because they are based on speculation, and, in any event, do not lead to the conclusion that Plaintiffs intend; instead, as the judicially-noticeable public record shows, the Loan was sold—but to the Trust with Chase retaining the servicing rights. Chase and WTC maintain that any allegations that some other entity received the Loan in 2004 are too speculative to support relief.

The Court agrees with Chase and WTC. Chase and WTC have set forth their detailed history of how they inherited Plaintiffs' Loan and right to foreclose based on WAMU's sale of the Loan to the Trust in 2004 and the transfer of WAMU's assets to Chase by the FDIC in 2008. The Court will not pretend to understand each legal operation that led to that result, except insofar as Plaintiffs' Complaint only challenges this chain by asserting that WAMU sold their Loan to

some unknown third party other than the Trust (or Chase). In other words, Plaintiffs do not challenge Chase and WTC's ability to foreclose on the Property if either WAMU kept the Loan until 2008 or transferred it to the Trust.

Plaintiffs' Complaint does not contain sufficient factual allegations that a sale to some other third party took place in 2004. First of all, it only asserts that WAMU sold the Loan to a third party. Such allegations are consistent with the Trust's acquisition of the Loan in accordance with the business model Plaintiffs allege. In other words, Chase and WTC have explained why the sale of the Loan to a third party, consistent with Plaintiffs' allegations, does not render void the Loan documents.

Moreover, to the extent Plaintiffs are alleging that the Loan was sold to a third party other than the Trust, in the absence of specific identification of the third party or any factual basis for this assertion, Plaintiffs' allegations are too speculative and conclusory to support their claims.

In *Schoenbart v. U.S. Bank N.A.*, No. C 16-00070 WHA 2016 U.S. Dist. LEXIS 92353 (N.D. Cal. July 15, 2016), the Northern District of California considered similar allegations. The plaintiff had obtained a loan from WAMU secured by a deed of trust on her property. Like Plaintiffs in this case, the plaintiff alleged that the FDIC placed WAMU into receivership in 2008. The court took judicial notice that the FDIC immediately sold WAMU's assets to Chase, which assumed WAMU's banking operations and loan portfolio. Through a series of transactions, Chase eventually assigned the loan to itself and then recorded a second assignment, assigning the loan to U.S. Bank which then executed a substitution of trustee, purporting to substitute Quality as trustee. Quality then executed and recorded a notice of trustee's sale.

The plaintiff sued, alleging that WAMU sold the loan before being placed into receivership by the FDIC, thus depriving Chase of any interest in the loan and invalidating its subsequent assignments:

> [The plaintiff] essentially speculates that because WAMU had a business model of securitization, WAMU must have securitized and sold her loan to a third-party investment trust in 2007 (a la "The Big Short"). [The plaintiff] claims, based solely on WAMU's business model, that the FDIC could not have acquired her loan when it put WAMU into receivership nine months later. Thus, she argues, Chase could not have acquired her loan, when it assumed WAMU's loan portfolio.

10

> Rather, [the plaintiff] asserts that an unnamed and unknown third-party investment trust must own the beneficial interest in her loan (and for reasons known only to itself, has taken no action all these years to collect on the loan). As such, she argues that Chase, as attorney-in-fact for the FDIC, had no interest in the deed of trust to assign to itself and that all documents stemming from that invalid transfer assignment are void.

*Id.* at *3. The *Schoenbart* court, however, refused to credit the loan sale allegations:

> Counsel conceded at the hearing that the allegation that WAMU sold Schoenbart's loan in 2007 is based on nothing more than mere conjecture. WAMU's business model of securitization involved the bundling of home loans into securities, which it then sold on the secondary mortgage market. Based on this general business model and nothing more, Schoenbart alleges that her specific loan was bundled and sold in December 2007. Schoenbart offers no specific factual basis for the assertion that WAMU bundled and sold *her* specific loan. Thus, she has not properly alleged that defendants lack the ability to foreclose.

> Two things highlight the speculative nature of this allegation. One is that *if* the loan had been sold to some unknown investor, surely that investor would have surfaced and demanded payment when Schoenbart defaulted eight years ago. That no one has self-identified in these circumstances is convincing that no such investor exists. (Had plaintiff alleged such a specific investor, then the complaint would have been sustained.) The other is that at the end of WAMU's runs, a large portfolio of loans remained in its possession—the very ones taken over by the FDIC. If the "business model" were as accurate and efficient as Schoenbart's counsel supposes, no loans would have been left for the FDIC to seize.

*Id.* at 6-7.

More recently, another court in the Northern District of California considered similar allegations in a suit alleging wrongful foreclosure and cancellation of instruments. *See Boruta v. JPMorgan Chase Bank, N.A.*, 19-cv-03164, 2019 WL 4010367 (N.D. Cal. Aug. 26, 2019). The Borutas were the owners of the subject property via a loan issued by WAMU, which was secured by a deed of trust recorded against the subject property. Solely on information and belief, the Borutas alleged that WAMU sold and/or transferred the loan to an unnamed third party and ceased to be the lender of the beneficiary under the note or deed of trust after April 9, 2005.

Defendant Chase maintained that it acquired the Borutas' loan through the Purchase and Assumption Agreement with the FDIC. Chase then executed a substitution of trustee naming Quality Loan Corp as the trustee. Quality then executed a Notice of Default and Election to Sell Under Deed of Trust. Years later, Quality executed a notice of trustee's sale. The Borutas brought

claims against Chase and Quality seeking to cancel the notice of default, the substation of trustee, the assignment of deed of trust, and the notice of trustee's sale. Plaintiffs also advanced a wrongful foreclose theory of recovery. As is the case here, the Borutas' theory was that Chase never inherited the Borutas' loan from the FDIC because WAMU discarded it before it failed, thus, Chase's foreclosure was illegal and the associated instruments subject to cancellation.

The court, this time Judge William H. Orrick, granted Chase's motion to dismiss:

> I side with my colleagues in *Lewis*[3], *Huweih*[4], and *Schoenbart* to find that the Borutas' allegations that a loan was sold prior to assignment based solely on information and belief is insufficient. 2017 WL 2903192 at *6; 2017 WL 396143, at *4; 2016 WL 4791750, at *1.

Though not binding, the Court finds the decisions in *Schoenbart* and *Borutas* persuasive. Even if Plaintiffs alleged that the Loan was sold to an entity other than the Trust, such an allegation made on information and belief would be insufficient, especially in light of the fact that no such third party has attempted to collect on the Loan or foreclose on the property.

Plaintiffs argue that their "information and belief" allegations are sufficient here because they have sufficiently put "Defendants on notice of the claims being made against them," but this is not enough where Plaintiffs' allegations are speculative and not tethered to any factual support. *See, e.g, Vivendi SA v. T-Mobile USA Inc.*, 586 F.3d 689, 694 (9th Cir. 2009) ("information and belief" allegations that Defendant "conducted business in the United States…do not establish plausibly that a U.S. entity participated" in alleged misconduct, where plaintiff failed to allege facts related to Defendants' activities in the United States).

Plaintiffs also claim that the facts necessary to support the information and belief allegations will be obtained through discovery. They cite *Carolina Cas. Ins. Co. v. Team Equip., Inc.*, 741 F.3d 1082, 1088 (9th Cir. 2014). But *Carolina* does not stand for the proposition that

---

[3] *See Lewis v. U.S. Bank National Association*, 16-cv-05490-JSW, 2017 WL 2903192 (N.D. Cal. April 5, 2017).

[4] *See Huweih v. US Bank Trust, N.A.*, 16-cv-00421, 2017 WL 396143 at *4 (N.D. Cal. Jan. 30, 2017) ("Moreover, even assuming, arguendo, Huweih has standing to bring her claim, she has not alleged sufficient facts to support her assertion that the challenged assignment is void due to a prior sale. Although Huweih alleges "BofA sold [Huweih's] [l]oan between July 1, 2008 and December 31, 2008" (see Compl. ¶ 11), she fails to identify the individual or entity to whom the Loan allegedly was sold or the factual basis for her allegation such sale occurred.") (citation omitted).

any allegation may be pleaded on information and belief when a defendant is more likely to possess the information at issue. It instead stands for "the sensible proposition that, at [the motion to dismiss] stage in the proceedings, a party should not be required to plead jurisdiction affirmatively based on actual knowledge." *Carolina*, 741 F.3d at 1087. Here, Plaintiffs are not attempting to establish the citizenship of any defendant for jurisdictional purposes. Moreover, "[t]hey also have not made any non-conclusory showing that at least some information necessary to establish [their claims] was within the defendants' control." *Boruta*, 2019 WL 4010367 at *6.[5]

Further, Plaintiffs fail to allege "prejudice beyond the foreclosure." *Cardenas v. Caliber Home Loans, Inc.*, 281 F.Supp.3d 862, 872 (N.D. Cal. 2017). That is, Plaintiffs fail to allege "(1) that the void assignment changed the borrower's payment obligations; (2) that the void assignment 'interfered in any manner with [the borrower's] payment'; or (3) that the true owner of the loan—the entity that actually has the authority to foreclose—'would have refrained from foreclosure under the circumstances presented.'" *Id.* (quoting *Fontenot v. Wells Fargo Bank, N.A.*, 198 Cal.App.4th (Cal. App. 2011) *disapproved on other grounds by Yvanova v. New Century Mortgage Corp.*, 365 P.3d 45 (Cal. 2016); *Herrera v. Fed. Nat'l Mortg. Ass'n*, 205 Cal.App.4th 1495, 1508-08 (Cal. App. 2012), *disapproved of on other grounds* by *Yvanova*, 365 P.3d at 845; *Kalnoki v. First Am. Tr. Servicing Sols., LLC*, 8 Cal.App.5th 23, 48 (Cal. App. 2017) (quoting *Fontenot* and *Herrera*). Instead, there appears to be no dispute from the record that Syvlia Brown was in default or that the subject property was subject to foreclosure.

In sum, Plaintiffs' allegations are insufficient to support their wrongful foreclosure and cancellation of instruments causes of action; Chase and WTC's motion to dismiss should be granted accordingly.

\\\

---

[5] The Court does not rely on Plaintiffs' allegations in the *Brown* 1 proceedings in making these recommendations. *See, e.g, Kohler v. Leslie Hindman, Inc.*, 80 F.3d 1181, 1185 (7th Cir. 1996) ("[A] statement made in one lawsuit cannot be a judicial admission in another."); *Universal Am. Barge Corp. v. J-Chem, Inc.*, 946 F.2d 1131, 1142 (5th Cir. 1991) ("[J]udicial admissions are not conclusive and binding in a separate case from the one in which the admissions are made."); *United States v. Raphelson*, 802 F.2d 588, 592 (1st Cir. 1986) ("[A] pleading in one case is not a conclusive judicial admission in a later one."); *Grove Lumber & Bldg. Supply, Inc., v. Argonaut Ins. Co.*, SACV 07-1396 AHSRNBX, 2008 WL 2705169 (C.D. Cal. May 9, 2008) (same); *Rankine v. Roller Bearing Co. of Am., Inc.*, 12-CV-2065-IEG BLM, 2013 WL 1942199 (S.D. Cal. May 9, 2013) (same).

**C. Leave to Amend**

Plaintiffs' opposition includes a very brief request for leave to amend if the Court is inclined to grant the motion to dismiss. Plaintiffs state that they have consulted with a forensic accounting and auditing expert who will opine that Plaintiffs' Loan was not "included in the pool of Loans owned by WAMU just before they were placed into receivership by the FDIC." (ECF No. 10, p. 9.)

This cursory description is not sufficient to allow leave to amend. The asserted additional information is too vague to allow the Court to determine whether amendment would be futile, as there is, for example, no discussion of how the expert reaches that conclusion. *See Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995) ("Futility of amendment can, by itself, justify the denial of a motion for leave to amend."). Nor did Plaintiffs attach the expert opinion to the opposition for the Court to review. Moreover, such an opinion does not necessarily support the crucial allegation that WAMU sold Plaintiffs' Loan to an unidentified third-party other than the Trust that, for reasons unexplained, has not sought payment or foreclosure from Plaintiffs.

The Court is also aware of the time-sensitive nature of this issue. Plaintiffs seek to prevent foreclosure of their Property, despite admitting to defaulting on their Loan. They have already dismissed one case only to file another with substantially similar allegations. Allowing further delay based on the limited information before the Court, would not serve the interests of justice.

Accordingly, to the extent the brief request for leave to amend in Plaintiffs' opposition can be considered a proper request for leave to amend, the Court recommends that it be denied.[6]

**IV. CONCLUSION**

Accordingly, based on the foregoing, the Court HEREBY RECOMMENDS that:

1. Chase and WTC's Request for Judicial Notice (ECF No. 4.) be GRANTED; and that
2. Chase and WTC's Motion to Dismiss (ECF No. 3.) be GRANTED; and

---

[6] Plaintiffs also purport to bring causes of action for "declaratory relief" and "to set aside Trustee's sale." But declaratory relief is not a cause of action; it is instead a form of relief. *Eugene N. Gordon, Inc. v. La-Z-Boy, Inc.*, No. 2:06-CV-2353, 2007 WL 1101456 at *7 (E.D. Cal. Apr. 12, 2007) ("Plaintiffs' claims for specific performance and declaratory relief have been dismissed because they are remedies as opposed to stand-alone claims."). The same is true of a request for injunctive relief. *Id.* Thus, Plaintiffs' "causes of action" for "declaratory relief" and "to set aside the Trustee's sale" fail to state a claim and should be dismissed with prejudice.

3. Plaintiffs' request for leave to amend be denied.

These findings and recommendations are submitted to the district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within thirty days after being served with these findings and recommendations, Plaintiffs may file written objections with the Court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiffs are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **September 11, 2019**

/s/ Erica P. Grosjean
UNITED STATES MAGISTRATE JUDGE